UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| OCTAIVIAN D. REEVES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No.: 3:20-cv-326-TAV-HBG |
| | ) |
| MORGAN COUNTY | ) |
| CORRECTIONAL COMPLEX, | ) |
| TONY PARKER, | ) |
| DAVID SEXTON, | ) |
| LEE DELOR, | ) |
| MIKE PARRIS, | ) |
| OFFICER DARBE, | ) |
| LIEUTENANT WALLS, | ) |
| LIEUTENANT LAUGHTER, | ) |
| TYLER LONGMIRE, | ) |
| CORRECTIONAL OFFICER GOLDIE, | ) |
| CORRECTIONAL OFFICER LYNCH, | ) |
| SGT. CRAS, | ) |
| SGT. HICKS, | ) |
| DR. GREGORY MOCK, | ) |
| NURSE HICKS, and | ) |
| CORRECTIONAL OFFICER ANTHONY HILL, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

The Court is in receipt of a pro se prisoner's complaint for violation of 42 U.S.C. § 1983 [Doc. 3], a declaration for leave to proceed *in forma pauperis* [Doc. 2], and a motion to appoint counsel [Doc. 4].

**I.    DECLARATION TO PROCEED *IN FORMA PAUPERIS***

The Court construes Plaintiff's declaration to proceed *in forma pauperis* ("IFP) as a motion to proceed IFP [Doc. 2]. It appears from the declaration and supporting documents

that Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 2] will be **GRANTED**.

Because Plaintiff is an inmate in the Morgan County Correctional Complex, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, and to the Attorney General for the State of Tennessee. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution. The Clerk also will be **DIRECTED** to provide a copy to the Court's financial deputy.

**II.     MOTION TO APPOINT COUNSEL**

Appointment of counsel in a civil proceeding is not a constitutional right, but a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F. 2d 601, 605-06 (6th

2

Cir. 1993). A district court has discretion to determine whether to appoint counsel for an indigent party. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). In exercising that discretion, the district court should consider the nature of the case, whether the issues are legally or factually complex, and the party's ability to present his claims. *Lavado*, 992 F.2d at 605-06. After considering these factors, the Court finds that appointment of counsel is not warranted in this case. Accordingly, Plaintiff's motion to appoint counsel [Doc. 4] will be **DENIED**.

### III. SCREENING

#### A. PLAINTIFF'S RELEVANT ALLEGATIONS

Shortly after noon on September 12, 2019, Plaintiff arrived in the main kitchen at the Morgan County Correctional Complex ("MCCX") to report for work [Doc. 3 p. 5]. At that time, other inmates were attempting to enter through the wrong door, and an altercation occurred between Correctional Officer ("CO") Jackson and one of the inmates [*Id*. at 5-6]. Plaintiff and "the other guys" could not intervene, because CO Jackson "was out" with the first blow [*Id*. at 6]. Other officers arrived in the kitchen and directed the inmates to line up along the wall [*Id*.]. After stopping in the stock-room cooler to hide his liquor and cigarettes, Plaintiff placed his back against the wall in front of a camera [*Id*.].

Officers walked around the kitchen area inspecting the inmates' arms and torsos to determine who had been involved in the altercation [*Id*. at 6, 49-50]. Plaintiff removed his shirt and held it up to the camera to show that there was no blood on it [*Id*. at 6]. CO Tyler Longmire then "came directly to [Plaintiff] in a[n] aggressive manner saying put your shirt on" [*Id*.]. Plaintiff stood up to comply and asked CO Longmire "if he couldn't ask any better than that," which prompted CO Longmire to direct Plaintiff to place his arms behind his back

3

[*Id*.]. Plaintiff told the officer "that he was tripping," but when CO Longmire directed him a second time, Plaintiff complied by placing his hands behind his back [*Id*. at 6-7]. CO Longmire cuffed Plaintiff tightly and yelled for Plaintiff to stop resisting [*Id*. at 7].

Thereafter, CO Goldie, CO Lynch, and Officer Darbe "jumped on" Plaintiff, and Lieutenant Walls punched Plaintiff in the face [*Id*.]. The officers began removing the handcuffed, nonresistant Plaintiff from the area, and during the transport, CO Longmire "r[a]n [Plaintiff's] head into the wall" and through doors, and Plaintiff was thrown repeatedly to the ground [*Id*. at 8]. Sgt. Hicks and his wife, Nurse Hicks, were standing inside the dining room when officers brought Plaintiff through the room (ramming his head into the ice machine during the process), but neither Sgt. Hicks nor Nurse Hicks intervened [*Id*.]. Plaintiff was thrown to the floor again, and Sgt. Cras walked by but failed to intervene [*Id*.]. The transport continued, and once the parties were on the boulevard, Plaintiff was again dropped to the ground where CO Longmire "stepped on [Plaintiff's] face" to prevent him from speaking as Warden Mike Parris approached [*Id*.]. Nevertheless, Plaintiff was able to yell to Warden Parris that he did not do anything, but Warden Parris told him to "shut up" and continued walking [*Id*.]. The officers continued to strike Plaintiff on the way to intake, where Lieutenant Laughter "stepped in" and said "that was enough" [*Id*. at 9].

Plaintiff was placed in an intake holding cell for approximately fifteen minutes before he was transported to segregation "pending investigation" into the incident involving CO Jackson [*Id*. at 9-10]. Later that evening, "the nurse" came into the pod and Plaintiff stated that he was in pain and requested treatment [*Id*.]. The nurse told Plaintiff that she did not see any of the cuts, scrapes, and knots Plaintiff attempted to show her [*Id*. at 9]. She refused to tell Plaintiff her name [*Id*.]. The same night, Corporal Anthony Hill sent Plaintiff's property

4

to him, but Plaintiff's fan, clothes, television, and commissary had been taken in retaliation for the assault against CO Jackson [*Id*.]. Plaintiff was written up for defiance on September 13, 2019, and he ultimately pled guilty, despite his insistence that he never became loud or argumentative the day prior [*Id*. at 10, 15-16, 46-47].

Plaintiff was released from segregation on September 20, 2019, and reported to work after dropping off his property in his unit [*Id*. at 10]. On the way to work, he gave an officer a sick call request, which the officer took directly to the medical clinic for Plaintiff [*Id*.].

Plaintiff saw a nurse on September 24, 2019, and he advised her of the knot on his head and stomach, along with pain in his shoulders, elbows, back, legs, and neck [*Id*.]. The nurse referred Plaintiff to Dr. Greg Mock, because Plaintiff requested an x-ray [*Id*.]. However, Plaintiff did not see Dr. Mock on the date scheduled, because Dr. Mock was "a no show" [*Id*.]. Plaintiff received a pass to see Dr. Mock on October 2, 2019, and an x-ray was performed [*Id*. at 11]. Plaintiff filled out another sick call form to get the results, and Dr. Mock advised Plaintiff that the results were "normal," but Plaintiff never saw the results personally [*Id*.]. Plaintiff never received any medication for pain [*Id*.]. Plaintiff sought more tests and treatment for his pain, but he never got an answer as to "what was going on with [his] serious medical needs" [*Id*. at 11-12].

On October 16, 2019, Plaintiff was at work in the kitchen when an officer told him he had to move to a different unit [*Id*. at 12]. After preparing a food cart, Plaintiff went to report to the food steward that the cart was ready [*Id.*]. While he was in the office, he heard CO Lynch, who was on the phone, say his name [*Id*.]. Plaintiff stepped back into the office when he heard his name, and Officer Lynch asked, "[W]here is that sucker[,] Octaivian Reeves at[?]" [*Id*.]. Plaintiff told Officer Lynch not to call him a sucker and went to work on the back dock,

5

where Officer Lynch came to "harass" him again [*Id*.]. Plaintiff told Officer Lynch to stay away from him, and Officer Lynch called for assistance [*Id*. at 13]. An officer arrived to pat Plaintiff down, place Plaintiff in handcuffs, and take Plaintiff to intake [*Id*.]. After approximately thirty minutes in intake, Plaintiff was cleared to go back to the kitchen to get his identification, and then he was to go pack and move to the different unit [*Id*. at 13]. On his way out of the kitchen, however, an officer explained that Plaintiff had to return to intake [*Id*.]. Once he was back in intake, Plaintiff was again handcuffed and taken to segregation, where he remained for several days [*Id*.]. This incident occurred, upon Plaintiff's "information and belief," because he had filed a Title VI complaint on September 12, 2019, concerning the use of force against him on that date [*Id*.].

On November 18, 2019, Plaintiff was given a recommendation for group therapy [*Id*. at 14]. However, Warden Mike Parris denied him participation in the program, upon Plaintiff's "information and belief," because of the Title VI grievance Plaintiff had filed [*Id*.].

Plaintiff presented the facts relating to this complaint in grievances to Warden Parris, Commissioner Tony Park, and Assistant Commissioners Lee Delor and David Sexton [*Id*. at 15]. He was not, however, afforded the relief sought. Thereafter, he filed the instant suit seeking declaratory, injunctive, and monetary relief.

### B. SCREENING STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

6

and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim, however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### C. ANALYSIS

#### 1. Retaliation

First, the Court considers whether Plaintiff has stated a plausible claim that he was retaliated against by Defendants for filing a Title VI complaint. To establish a retaliation

7

claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, the Court finds there is no plausible causal connection between the first and second elements of a retaliation claim. Plaintiff's allegations and the documents accompanying his complaint make it clear that Plaintiff was placed in segregation for disciplinary reasons and not in retaliation for filing a Title VI complaint.[1] Plaintiff's subjective belief that he has been retaliated against is insufficient to state a claim. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Accordingly, Plaintiff's wholly conclusory allegations of Defendants' retaliatory motives are insufficient to state a claim under § 1983 for retaliation. *See, e.g., Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). Therefore, this claim will be **DISMISSED**.

## 2. Personal Property

Second, the Court considers Plaintiff's claim that he has been deprived of his personal belongings due to Defendants' actions. The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not violated when a State employee randomly deprives an individual of property, provided that the State makes available a meaningful post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled*

---

[1] To the extent Plaintiff alleges that Defendants "harassed" or humiliated him to provoke a response, the Court notes such conduct, while perhaps unprofessional, does not state a constitutional violation. See *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir.1987).

8

*on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Thus, to state a § 1983 claim premised on a procedural due process violation, Plaintiff "was required to plead . . . that there is no adequate state-law remedy for this deprivation." *Hill v. City of Jackson, Michigan*, No. 17-1386, 2018 WL 5255116, at *3 (6th Cir. Oct. 22, 2018). Plaintiff has not pled that Tennessee's post-deprivation procedures are inadequate for redressing the alleged wrong as is necessary to sustain his § 1983 claim. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Moreover, the Court notes that Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, 2001 WL 839037 * 1 (Tenn. Ct. App. July 25, 2001) (citing to Tenn. Code. Ann. § 29-30-101 and § 29-30-201). Plaintiff has not shown that these State remedies are inadequate, and therefore, he has not stated a claim that would entitle him to relief under § 1983 for the deprivation of his personal property. Accordingly, this claim will be **DISMISSED**.

### 3. Participation in Programs

Third, the Court finds that Plaintiff has not stated a claim against Defendant Warden Parris for denying Plaintiff the opportunity to participate in group therapy. To state a cognizable constitutional claim for the denial of programs, Plaintiff must demonstrate that his interest in the program is a liberty interest protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). However, prisoners possess no constitutional right to such educational, vocational, or rehabilitative privileges. *See,*

*e.g., Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006) (holding "a prisoner does not have a constitutional right to prison employment or a particular prison job"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."). Therefore, Plaintiff's due process claim for the denial of participation in programs will be **DISMISSED**.

### 4. Grievances

Fourth, the Court notes that Plaintiff alleges that he pursued the administrative grievance process to its conclusion by asserting the claims in the instant complaint to grievances to Defendants Parris, Parker, Sexton, and Delor. To the extent Plaintiff purports to assert this allegation as a constitutional claim, the Court notes that inmates have no constitutional right to a grievance procedure, and they therefore have no interest in having any such grievances satisfactorily resolved. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Accordingly, any alleged infirmities the grievance procedure and/or response fail to raise a viable constitutional issue.

Further, the Court notes that Defendants Parris, Parker, Sexton, and Delor cannot be held liable for merely failing to act upon Plaintiff's grievances, as "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Therefore, this claim will be **DISMISSED**.

### 5. Medical Care

Fifth, the Court considers Plaintiff's claim that he was denied medical care. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). This provision is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A prisoner claiming the deprivation of adequate medical care must meet both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). That is, Plaintiff must allege that (1) the medical need is sufficiently serious (the objective component) by demonstrating that he is incarcerated under conditions posing a substantial risk of harm; and (2) the official acted with "deliberate indifference" (the subjective component) in that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 834-837.

A prisoner cannot state a claim of deliberate indifference by suggesting that he was misdiagnosed or not treated in a manner he desired. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (finding provider possibly negligent but not deliberately indifferent when unaware of prisoner's serious heart condition); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "misdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). As the Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In

11

> order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations and internal citations omitted).

In his complaint, Plaintiff claims that he requested medical treatment from an unidentified nurse when he was placed in segregation on September 12, 2019, and that he was denied such treatment. However, even if the Court were to conclude that the denial of medical treatment on that occasion plausibly stated a claim for deliberate indifference, Plaintiff has failed to identify the wrongdoer. Therefore, the Court cannot issue process as to any named Defendant based on any denial of medical treatment while Plaintiff was in segregation. *See, e.g., Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

As for the remainder of his requests for treatment, the Court notes that Plaintiff alleges that he filled out a sick-call request upon his release from segregation on September 20, 2019, that was hand-delivered to the medical clinic by an officer, and that he was evaluated by a nurse four days later [Doc. 3 p. 10, 55, 60]. The nurse referred Plaintiff to Dr. Mock, who ultimately performed the x-rays Plaintiff wanted and determined the results were "normal" [*See id*. at 10-11, 62]. In fact, the documents attached to the Plaintiff's complaint demonstrate that he received some sort of medical and/or mental health evaluation multiple times between September and December 2019 [*See id*. at 60-65]. Plaintiff cannot state a constitutional claim against Dr. Mock based on his failure to treat conditions that he found unsubstantiated after medical tests, and Plaintiff's dissatisfaction with the medical care he received falls short of

12

establishing that any named Defendant was deliberately indifferent to a serious medical need. Accordingly, this claim will be **DISMISSED**.

### 6. Excessive Force

Sixth, Plaintiff maintains that he was subjected to excessive force. In determining whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e. the subjective component; and (2) whether the conduct, in context, is sufficient serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992). The subjective competent requires consideration of the need for the use of force, the relationship between that need and the force used, the threat reasonably perceived by the official, and the extent of the injury. *Hudson*, 503 U.S. at 7. To satisfy the objective component, an inmate need not prove a serious injury to prove cruel and unusual treatment, but the extent of the injury may be probative of whether the force was plausibly "thought necessary" in the situation. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010). However, "not every malevolent touch by a prison guard" creates a federal claim, and *de minimis* uses of physical force that are not repugnant to the conscience of mankind do not violate the Eighth Amendment. *Id*. (quoting *Hudson*, 503 U.S. at 9).

Here, Plaintiff concedes that he spoke back to officers when confronted in a manner he finds aggressive or harassing, and his initial noncompliance with officers' instructions could potentially result in a mild use of force. As the Sixth Circuit has held, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a

13

prisoner's constitutional rights." *Pelfrey v. Chambers*, 43 F.3d 1034, 1039 (6th Cir. 1995) (internal quotation marks and citation omitted). However, Plaintiff also alleges that he was punched, thrown to the ground, stepped on, and his head repeatedly used as a battering ram while he was handcuffed and nonresistant. Therefore, the Court finds Plaintiff has stated a plausible claim of excessive force against Defendants Longmire, Goldie, Lynch, Darbe, and Walls, and this claim will be permitted to **PROCEED**.

### 7. Failure to Protect

Next, the Court considers whether Plaintiff has alleged a plausible claim that Defendants violated his constitutional rights under the Eighth Amendment in failing to protect him from violence at the hands of other correctional officers. Prison officials have a duty to protect inmates from violence and take reasonable measures to protect their safety. *Farmer*, 511 U.S. at 832-33. As noted above, liability attaches to an officer's failure to protect an inmate only where the inmate demonstrates that he was "incarcerated under conditions posing a substantial risk of serious harm and that the prison officials acted with deliberate indifference to the inmate's safety." *Id*. at 834. "Deliberate indifference" means that a prison official is liable only where he knows that the inmate faces a substantial risk of serious harm and disregards the risk. *Id*. at 837 (quotation marks omitted). Therefore, in order for liability to attach to a prison official's failure to protect, the substantial risk and need for protection must be obvious. *See, e.g., Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

Because of the subjective component necessary to establish failure-to-protect liability, an officer cannot be deliberately indifferent when an inmate is a victim of an unforeseeable attack. *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002). Therefore, an officer's negligence

14

or dereliction of duty cannot be the basis of a failure-to-protect claim. *See Daniels v. Williams*, 474 U.S. 327 (1986) (holding negligence does not state §1983 cause of action).

Here, Plaintiff alleges that Defendants — presumably Sgt. Hicks, Nurse Hicks, Lieutenant Laughter, Sgt. Cras, and Warden Parris — should have intervened when Plaintiff was being transported to intake by the officers who were allegedly assaulting him. However, Plaintiff's complaint is bereft of any indication that Sgt. Hicks or Nurse Hicks could have prevented any harm to Plaintiff; he alleges merely that they were somewhere in the dining hall and failed to "sa[y] anything." *See, e.g., Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) ("Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.") (citation omitted). Neither does Plaintiff state an actionable claim against Lieutenant Laughter for failure to protect, as he only alleges that Laughter told officers "that was enough" when Plaintiff arrived at intake [Doc. 3 p. 9]. Therefore, Plaintiff fails to establish that Defendants Sgt. Hicks, Nurse Hicks, or Lieutenant Laughter had both the means and opportunity to prevent any harm to Plaintiff. Similarly, Plaintiff alleges only that Sgt. Cras "walked pas[t]" while Plaintiff was on the floor in the dining hall. He does not allege that Sgt. Cras witnessed any use of force that he should have known was excessive or that Sgt. Cras had the opportunity to prevent any such use of force. Accordingly, Defendants Sgt. Hicks, Nurse Hicks, Lieutenant Laughter, and Sgt. Cras will be **DISMISSED** from this claim.

However, Plaintiff has alleged that Warden Parris walked by as CO Longmire had his foot on Plaintiff's face and failed to intervene [Doc. 3 p. 9]. The Court finds that this allegation

15

plausibly states a claim against Warden Parris for a failure to protect Plaintiff from harm, and therefore, the Court will allow this claim to **PROCEED** solely against Warden Parris.

### 8. Non-Suable Entity

Finally, the Court finds that MCCX, a State prison within the Tennessee Department of Correction, is not subject to suit under § 1983, as it is not a "person" under the law. *See, e.g., Will v. Mich. Dep't of State Police*, 491 U.S. 68, 65-71 (1989); *Hix v. Tenn. Dept. of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006). Accordingly, MCCX will be **DISMISSED** from this action.

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, to the Attorney General for the State of Tennessee, and to the Court's financial deputy;

5. Plaintiff's motion for the appointment of counsel [Doc. 4] is **DENIED**;

6. Plaintiff has failed to state a cognizable constitutional claim against Sgt. Hicks, Nurse Hicks, Sgt. Cras, Lieutenant Laughter, Anthony Hill, Tony Parker, David Sexton, Lee Delor, Dr. Gregory Mock, or MCCX, and these Defendants are **DISMISSED**;

7. The following claims will be permitted to **PROCEED** against Defendants as follows: (1) that Defendants Longmire, Goldie, Lynch, Darbe, and Walls subjected Plaintiff to excessive force; and (2) that Defendant Parris failed to protect Plaintiff from excessive force;

8. The Clerk is hereby **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Longmire, Goldie, Lynch, Darbe, Walls, and Parris;

9. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this memorandum and order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

10. Plaintiff is **NOTIFIED** that failure to return the completed service packets within the time required will result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

11. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default;

12. Plaintiff's remaining claims are **DISMISSED**;

13. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE